**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

KEISHA FISHER GUEST                                                                                          PLAINTIFF

v.                                              No. 4:12CV00336 JLH

BOBBY SHELL, Individually and in his
Official Capacity as a Benton Police Officer                                                          DEFENDANT

**OPINION AND ORDER**

This action stems from the arrest of Keisha Fisher Guest by Bobby Shell, an officer of the Benton Police Department. Guest alleges in her complaint that Shell stopped her without probable cause, that he used excessive force, and that he seized her vehicle unlawfully. She asserts claims under federal law pursuant to 42 U.S.C. § 1983, as well as state-law claims under the Arkansas Civil Rights Act of 1993 and a state-law claim for conversion. Shell has moved for summary judgment. For reasons that will be explained, Shell's motion will be granted as to Guest's section 1983 claims, and the Court will decline to exercise supplemental jurisdiction over the state-law claims.

**I.**

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make a showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## II.

At approximately seven o'clock on the morning of April 7, 2011, Guest parked in a handicapped parking space, even though she is not handicapped, while she was dropping her daughter off at daycare in Benton. After she took her daughter into the daycare center and returned to her car, planning to drive another daughter to school, she was confronted by Shell, who asked her to provide her driver's license and registration after confirming that she lacked the necessary parking permit. When he ran the license and registration, Shell discovered that Guest had two outstanding warrants and that her license was suspended. While Shell was running Guest's license, Guest called her sister, who came to retrieve Guest's second daughter and take her to school. The sister arrived and engaged in a verbal altercation with Shell before leaving with Guest's second daughter. After the sister left, Shell patted down Guest and placed her under arrest. In her deposition, Guest described the incident as follows:

> Q	What happened after he did that?
> A	After he patted me down, he put the handcuffs on me.
> Q	Did he tell you you were being placed under arrest?

A	After he put the handcuffs on me, yes.
Q	And did he say why you were being placed under arrest?
A	Yes, after he put the handcuffs on. He said it before and after. He had already told me that I had a warrant. After he put the handcuffs on me, that's when he told me again that I had a warrant with the city and county. I kept telling him that I didn't have a warrant.
Q	Okay. What happened after he had the handcuffs on you?
A	He put the handcuffs on me. I told him that the handcuffs were tight. He was already a little upset, like I said, with the situation with my sister. I told him that the handcuffs were tight. When he walked me to the car, he kind of shoved me to the car. When I actually got in the car, he shoved me in the car and I hit my shoulder, my right shoulder, on the door.
Q	What made you believe that the handcuffs were too tight?
A	I felt them. They were tight on my wrists.
Q	So you just felt like they were kind of tight, so –
A	They were hurting.
Q	Was there any sort of physical injury –
A	Yes.
Q	– to your wrists from the handcuffs?
A	After the handcuffs were off, yeah, my wrists were hurting.
Q	Anything other than pain?
A	No, nothing other than pain.
Q	How long did they hurt?
A	The rest of the day.
Q	Did you have to go see a doctor because of your wrists?
A	I didn't.
Q	And so you said he walked you over to the car. Can you tell me exactly how he walked you over to his car?
A	Once I turned around and he got behind me, he did me like this, like a shove (Demonstrating). And when I actually got into the car, the way he put me in, he shoved me in and I hit my shoulder on the door. He was very rude and very rough.
Q	Well, explain to me in detail exactly how you say he shoved you into the car.
A	He just gave me, he gave me a push.
Q	So did he approach the vehicle with you in handcuffs, open up the vehicle door?
A	He opened the vehicle door, yes. Once I got ready to get in the car, he came back behind me and kind of gave me a shove and I hit my shoulder on the door.
Q	So when you say he shoved you, how were you going into the car?
A	What do you mean?
Q	Well, I guess usually when you sit down into a car, you're sitting –

| | |
|---|---|
| A | When he opened up the door, he came back behind me and he had to place me into the car, he shoved me into the door. |
| Q | So you went into the car shoulder first, is that what you're saying? |
| A | I went in this way, yes (Demonstrating), and my shoulder hit the back side of the door. |
| Q | And what kind of injury did you receive to your shoulder from that? |
| A | My shoulder was hurt. I didn't go to the doctor, but my shoulder was hurt from it. |
| Q | Just some pain your [sic] experienced? |
| A | Yes, and I still have that pain. |
| Q | So you haven't seen a doctor for it? |
| A | I did not. |
| Q | Has it ever kept you from doing any normal activity? |
| A | Well, you know, it hasn't just kept me from doing it, I just have the pain at nighttime. It's mainly at night. |
| Q | So when you alleged in your complaint that Officer Shell used excessive force when he arrested you, was there anything else that you were referring to other than the handcuffs being tight and the shove into the car that hurt your right shoulder? |
| A | No. |

Document #14-1, at 7.

Shell took Guest to the police station, where she was booked and released. Meanwhile, her vehicle was searched and impounded. After she was released, she and her husband went to the place to which it had been towed and obtained release of the vehicle. Guest was later convicted of parking in a handicapped parking space. The charges pertaining to the two outstanding warrants were dropped. Guest then commenced this action in the Circuit Court of Saline County, Arkansas. Shell removed the action to this Court based on federal question jurisdiction.

**III.**

As noted, Guest's first claim is that she was unlawfully stopped. In response to the motion for summary judgment, however, she has abandoned that claim. Therefore, Shell's motion for summary judgment is granted as to Guest's claim that he unlawfully stopped her.

Guest's next claim is that Shell used excessive force against her. The Eighth Circuit has held that a *de minimis* use of force is insufficient to support a finding that the Constitution has been violated. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011); *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003); *Hunter v. Namanny*, 219 F.3d 825, 832 (8th Cir. 2000). In other words, "not every push or shove by an officer violates the Fourth Amendment." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005). Though the fact that the injury is only *de minimis* does not necessarily foreclose a claim for excessive force, the degree of injury is relevant insofar as it tends to show whether the force was excessive. *Chambers*, 641 F.3d at 906; *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006). "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002); *see also Chambers*, 641 F.3d at 907 (an allegation of pain as a result of being handcuffed, without some evidence of more permanent injury, is insufficient to support a claim of excessive force). Here, based on Guest's testimony, the force used by Shell in handcuffing Guest and putting her into his patrol car was *de minimis*. *See Curd v. City Court of Judsonia, Ark.*, 141 F.3d 839, 841 (8th Cir. 1998) ("Even if seizing that [the plaintiff's] arm and turning her body was unnecessary to effect the arrest, we cannot conclude that this limited amount of force was objectively unreasonable.").

Even if Shell's use of force violated Guest's Constitutional rights, he would be entitled to qualified immunity. *See Chambers*, 641 F.3d at 904 (finding, in a nearly identical context, qualified immunity when even the district court did not address the issue). Qualified immunity shields a police officer from liability under 42 U.S.C. § 1983 unless his "conduct violates a clearly established constitutional . . . right of which a reasonable person would have known." *Brown v. City of Golden*

*Valley*, 574 F.3d 491, 495 (8th Cir. 2009). It was not until June 6, 2011 – nearly two months after the encounter between Guest and Shell – that it became clearly established in the Eighth Circuit that a plaintiff with only *de minimis* injuries could recover on an excessive force claim under section 1983. *See Chambers*, 641 F.3d at 907-09. It is beyond dispute here that Guest suffered, at most, *de minimis* injuries at the hands of Shell. *See* Document #14-1, at 7 (pain from handcuffs only lasted rest of the day and did not require a doctor visit; shoulder injury did not require a doctor visit and has not kept Guest from performing any normal activity); Document #15, at 1-2 (tacit admission by Guest that she suffered only *de minimis* injuries); *Chambers*, 641 F.3d at 906 ("This court has concluded that 'relatively minor scrapes and bruises' and a 'less-than-permanent aggravation of a prior shoulder condition' are to be considered *de minimis* injuries." (citation omitted)). Thus, Shell is entitled to qualified immunity. *See Chambers*, 641 F.3d at 908 ("Given the state of the law in August 2005, a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment."); *see also Glaze v. Ivey*, 2:11CV00081, 2012 WL 3537238 (E.D. Ark. Aug. 14, 2012) (similar).

On Guest's claim against Shell, individually, for having her vehicle impounded, Shell has submitted an affidavit stating that he did not participate in the impoundment process or inventory search of the vehicle. *See* Document #12-5, at 1. Guest's only response is to submit an affidavit from her husband, Monzell Guest, stating that he arrived at the scene after his wife was arrested and requested that the officers present, whom he does not name, allow him to take the vehicle. *See* Document #15-1. According to Monzell, the officers, "after consultation with Officer Shell on the radio, told me this was his stop, and he had ordered the vehicle towed. They refused to allow me to take the vehicle." *Id*. Monzell Guest's statement as to what the officers told him is hearsay with

6

respect to Shell.  *See* Fed. R. Evid. 801(c).  A party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay.  *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013) (quoting *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir. 1990).  This claim will be dismissed with prejudice.

Finally, Guest's claims against Shell in his official capacity are essentially claims against the City of Benton.  *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2012).  Guest has offered nothing here to show that any officer committed a constitutional violation pursuant to an official custom, policy, or practice of the city.  *See Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012).  Therefore, these claims will be dismissed with prejudice.

**IV.**

Having disposed of all of Guest's claims that are based on federal law, the remaining claims are state-law claims over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The Court may decline to exercise supplemental jurisdiction over state-law claims after dismissing all of the claims that arise under federal law.  *Id.* § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7, 98 L. Ed. 2d 720 (1988).  The Eighth Circuit has said: "We stress the need to exercise judicial restraint and avoid state law issues wherever possible.  We also recognize within principles of federalism the necessity to provide great deference and comity to state court forums to decide issues involving state law questions."  *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).

Here, Guest contends that the protections offered by the Arkansas Civil Rights Act are "significantly broader" than those available under federal law, so she contends that her Arkansas Civil Rights Act claims should survive even if the section 1983 claims do not. That is an issue best addressed by the state courts. Moreover, her conversion claim may well turn on state law governing the actions of police officers in impounding vehicles. Again, that issue is best left to the state courts. Therefore, out of deference and comity to the state courts, the Court declines to exercise supplemental jurisdiction over Guest's state-law claims. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009).

## CONCLUSION

For the reasons stated, all of the section 1983 claims asserted by Keisha Fisher Guest against Bobby Shell, individually and in his official capacity as a Benton police officer, are dismissed with prejudice. Because the Court declines to exercise supplemental jurisdiction over Guest's state-law claims against Shell, this action is remanded to the Circuit Court of Saline County, Arkansas, whence Shell removed it.

IT IS SO ORDERED this 14th day of March, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE